1
2
3
4
5
6
7

8                UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   KEVIN LLOYD HUBERT, JR.,                 No. 2:15-cv-0588-CKD

12                  Petitioner,

13          v.                                ORDER

14   E. ARNOLD, et al.,

15                  Respondents.

16

17          Petitioner, a state prisoner, is proceeding pro se with a petition for writ of habeas corpus

18   pursuant to 28 U.S.C. § 2254.  Petitioner challenges his 2012 conviction for vehicle theft with

19   enhancements for a prior conviction within the meaning of California's Three Strikes law and for

20   three prior prison terms, for which he received a nine-year prison term.  ECF No. 1 ("Ptn.").

21   Respondent filed an answer to the petition, and petitioner filed a traverse.  (ECF Nos. 11, 16.)

22   Upon careful consideration of the record and the applicable law, the petition is denied.[1]

23                            BACKGROUND

24   I.     Facts

25          In its affirmation of the judgment on appeal, the California Court of Appeal, Third

26   Appellate District, set forth the relevant factual background as follows:

27   _____

28   [1] The parties have consented to magistrate judge jurisdiction (ECF Nos. 8 and 10).

1

On the morning of April 3, 2012, Jonathan Flores found that his white Oldsmobile was not in its usual parking spot at his apartment complex in Woodland. He had locked the car the previous evening, but the driver's side window was rolled up only halfway. Flores had not given anyone permission to take the vehicle. He spoke to the police and reported the missing vehicle.

On April 7, 2012, Woodland Police Officer Brian Olson was on patrol with his police dog, Mondo, when he saw defendant driving the stolen Oldsmobile. Officer Olson looked at defendant directly in his face as defendant drove past him in the opposite direction. At the time, defendant was driving at about 25 miles per hour, which was the lawful speed limit. Once Officer Olson turned around to follow defendant, however, defendant made a quick right turn and began to accelerate rapidly. Defendant ran a red light and a truck had to make a very sudden stop to avoid a collision. When defendant reached a speed of about 100 miles per hour, the officer decided to discontinue the pursuit because of his concern for public safety. Officer Olson slowed down, but continued in the same direction that he had seen defendant going.

While driving down the same road, Officer Olson saw a crowd of people surrounding the front yard of a residence. It turned out that the Oldsmobile he had been pursuing had crashed into the front yard of a house, damaging a city water main and pole. People came out of their houses because of the noise they heard from the screeching tires and the loud crash. People then observed defendant running down the street.

Matthew Holland, one of the observers, tackled defendant and restrained him until Officer Olson reached the scene. At this point, Holland let defendant go. As Officer Olson got closer, he recognized defendant as the person he had seen driving the stolen vehicle. Defendant got up and ran toward a fence. Seeing this, Officer Olson commanded Mondo to chase after and bite defendant. Officer Olson ordered defendant to stop, but defendant jumped over the fence into the backyard of a residence, almost getting bit by Mondo in the foot as he did so.

Officer Olson got to the fence and saw defendant running across the backyard. He again commanded defendant to stop, warning that if he did not stop, he would be bitten. Officer Olson gave Mondo the bite command again and Mondo bit defendant on the arm and shoulder, bringing defendant to the ground. The officer then got control of defendant and brought him into custody.

Officer Cristobal Lara arrived and led defendant to an ambulance so that he could get treated for his bite wounds. While escorting him,

1
2
3
4
5

> Officer Lara searched defendant's pockets and found a plastic bag that contained methamphetamine.  At the hospital emergency room, Officer Olson questioned defendant about the vehicle.  Defendant said that he had bought the vehicle "for a couple hundred dollars" from a person named "Slick" and had received a pink slip recording the transaction.  However, defendant was unable to produce this pink slip.

6   Lodged Document ("Lod. Doc.") 4 at 2-3.[2]  The facts as set forth by the state court of appeal are

7   presumed correct, 28 U.S.C. §2254(e)(1), and are consistent with this court's review of the

8   record.

9   II.   Procedural History

10      Following a jury trial in the Yolo County Superior Court, petitioner was convicted of

11  misdemeanor charges of reckless driving,[3] hit and run with property damage,[4] and resisting or

12  obstructing a peace officer.[5]  Lod. Doc. 4 at 4.  The jury also returned a verdict of not guilty on a

13  charge of transportation of methamphetamine,[6] and could not reach a verdict on a charge for

14  unlawfully taking a vehicle.[7]  Id.  Accordingly, a second trial was held for the unlawfully taking a

15  vehicle charge, which resulted in a guilty verdict.  Id.  In a bifurcated proceeding, the trial court

16  found the prior conviction allegations, consisting of one prior serious conviction within the

17  meaning of California's Three Strikes Law,[8] and three prior prison terms,[9] to be true.  Id.

18      The trial court sentenced petitioner to an aggregate term of nine years imprisonment,

19  which was composed of an upper three-year term on the unlawfully taking a vehicle conviction,

20  which was doubled pursuant to California's Three Strikes Law, plus consecutive one-year

21  enhancements for each of the three prison term enhancements, and concurrent ninety-day

22  sentences for each of the three misdemeanor convictions.  Id. at 4-5.

23

24  [2] Lodged documents refer to documents lodged by respondent on May 26, 2015.  ECF No. 12.
    [3] Cal. Vehicle Code § 23103(a).
25  [4] Cal. Vehicle Code § 20002(a).
    [5] Cal. Penal Code § 148(a).
26  [6] Cal. Health & Safety Code § 11379.
    [7] Cal. Vehicle Code § 10851(a).
27  [8] Cal. Penal Code § 667(b)(i).
    [9] Cal. Penal Code § 667.5(b).
28

Petitioner appealed the judgment to the California Court of Appeal, Third Appellate District. Lod. Doc. 1. On November 13, 2013, the court of appeal affirmed the trial court's judgment and sentence. Lod. Doc. 4. Petitioner subsequently filed a petition for review in the California Supreme Court. Lod. Doc. 5. The Court summarily denied petitioner's petition on January 29, 2014. Lod. Doc. 6.

Petitioner filed the instant federal habeas petition on March 16, 2015. Ptn. Respondent filed an answer on May 26, 2015. ECF No. 11. Petitioner filed a traverse on October 2, 2015. ECF No. 16.

ANALYSIS

I.      AEDPA

The statutory limitations of federal courts' power to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). The text of § 2254(d) states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

As a preliminary matter, the Supreme Court has recently held and reconfirmed "that § 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" Harrington v. Richter, 131 S. Ct. 770, 785 (2011). Rather, "when a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Id. at 784-785 (citing Harris v. Reed, 489 U.S. 255, 265 (1989)) (presumption of a merits determination when it is unclear whether a decision appearing to rest on federal grounds was decided on another basis). "The

4

1  presumption may be overcome when there is reason to think some other explanation for the state

2  court's decision is more likely."  Id. at 785.

3      The Supreme Court has set forth the operative standard for federal habeas review of state

4  court decisions under AEDPA as follows:  "For purposes of § 2254(d)(1), 'an unreasonable

5  application of federal law is different from an incorrect application of federal law.'"  Harrington,

6  131 S. Ct. at 785 (citing Williams v. Taylor, 529 U.S. 362, 410 (2000)).  "A state court's

7  determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded

8  jurists could disagree' on the correctness of the state court's decision."  Id. at 786 (citing

9  Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).  Accordingly, "a habeas court must

10  determine what arguments or theories supported or . . . could have supported[] the state court's

11  decision; and then it must ask whether it is possible fairminded jurists could disagree that those

12  arguments or theories are inconsistent with the holding in a prior decision of this Court."  Id.

13  "Evaluating whether a rule application was unreasonable requires considering the rule's

14  specificity.  The more general the rule, the more leeway courts have in reaching outcomes in

15  case-by-case determinations.'"  Id.  Emphasizing the stringency of this standard, which "stops

16  short of imposing a complete bar of federal court relitigation of claims already rejected in state

17  court proceedings[,]" the Supreme Court has cautioned that "even a strong case for relief does not

18  mean the state court's contrary conclusion was unreasonable."  Id. (citing Lockyer v. Andrade,

19  538 U.S. 63, 75 (2003)).

20      The undersigned also finds that the same deference is paid to the factual determinations of

21  state courts.  Under § 2254(d)(2), factual findings of the state courts are presumed to be correct

22  subject only to a review of the record which demonstrates that the factual finding(s) "resulted in a

23  decision that was based on an unreasonable determination of the facts in light of the evidence

24  presented in the state court proceeding."  It makes no sense to interpret "unreasonable" in §

25  2254(d)(2) in a manner different from that same word as it appears in § 2254(d)(1) – i.e., the

26  factual error must be so apparent that "fairminded jurists" examining the same record could not

27  abide by the state court factual determination.  A petitioner must show clearly and convincingly

28  that the factual determination is unreasonable.  See Rice v. Collins, 546 U.S. 333, 338 (2006).

1    The habeas corpus petitioner bears the burden of demonstrating the objectively

2  unreasonable nature of the state court decision in light of controlling Supreme Court authority.

3  Woodford v. Viscotti, 537 U.S. 19 (2002).  Specifically, the petitioner "must show that the state

4  court's ruling on the claim being presented in federal court was so lacking in justification that

5  there was an error well understood and comprehended in existing law beyond any possibility for

6  fairminded disagreement."  Harrington, 131 S. Ct. at 786-787.  Clearly established" law is law

7  that has been "squarely addressed" by the United States Supreme Court.  Wright v. Van Patten,

8  552 U.S. 120, 125 (2008).  Thus, extrapolations of settled law to unique situations will not qualify

9  as clearly established.  See e.g., Carey v. Musladin, 549 U.S. 70, 76 (2006) (established law not

10  permitting state sponsored practices to inject bias into a criminal proceeding by compelling a

11  defendant to wear prison clothing or by unnecessary showing of uniformed guards does not

12  qualify as clearly established law when spectators' conduct is the alleged cause of bias injection).

13  The established Supreme Court authority reviewed must be a pronouncement on constitutional

14  principles, or other controlling federal law, as opposed to a pronouncement of statutes or rules

15  binding only on federal courts.  Early v. Packer, 537 U.S. 3, 9 (2002).

16  II.    Petitioner's Claims

17         A.  Cunningham Claim

18    First, petitioner contends that the trial court judge applied an improper legal standard

19  when sentencing him to the upper-term on his conviction for unlawfully taking a vehicle.  More

20  specifically, petitioner argues that the trial court judge improperly weighed aggravating factors

21  against mitigating factors and, thus, engaged in the sort of judicial fact finding found

22  unconstitutional by the United States Supreme Court in Cunningham v. California, 549 U.S. 270

23  (2007).  Petitioner asserts that the California Court of Appeal, Third Appellate District's rejection

24  of this claim when raised on petitioner's direct appeal was an unreasonable application of clearly

25  established Federal law.

26  /////

27  /////

28  /////

6

1                      1.  State Court Decision

2            In the last reasoned decision on this claim,[10] the California Court of Appeal, Third

3 Appellate District wrote:

> Defendant contends the trial court failed to use the "broader discretion" that is mandated by California's current sentencing law in imposing the upper term for unlawful taking.  Defendant argues the trial court enjoys increased discretion to impose the lower term than under previous law.  Rather than adhering to this new legal standard, he contends, the trial court used an unconstitutional standard in sentencing him to the upper term.  This is because the court balanced the aggravating factors against the mitigating factors before imposing his upper term sentence—something defendant argues the court cannot do in the wake of Cunningham v. California (2007) 549 U.S. 270 (Cunningham).  We conclude that the trial court did not abuse its discretion in imposing the upper term, because it had the authority, in its discretion, to weigh aggravating and mitigating circumstances pursuant to California's current sentencing law.
>
> In 2007, the United States Supreme Court declared California's determinate sentencing law (DSL) unconstitutional.  (Cunningham, supra, 549 U.S. at p. 288.)  Under this scheme, the trial judge, and not the jury, had the authority to find whether sentencing facts had been proven. (Ibid.)  Cunningham found the prior version of the DSL unconstitutional because it required the trial court to impose the middle term unless the court found aggravating facts that justified imposing the upper term.  (Ibid.)  The Supreme Court found that this sentencing scheme violated a defendant's right to trial by jury protected by the Sixth and the Fourteenth Amendments because it placed sentence-elevating factfinding in the judge's province rather than the jury's.  (Id. at p. 292.)
>
> The California Legislature responded by revising the DSL (People v. Sandoval (2007) 41 Cal.4th 825, 836, fn. 2) so that the trial court was no longer required to impose the middle term absent the finding of aggravating facts (id. at pp. 846-847; § 1170, subd. (c)).  Instead, the trial court now has the discretion to impose either the lower, middle, or upper term, and the trial court need only state its reasons for its choice.  (§ 1170, subd. (b).)  The court's sentencing decision is subject to review for abuse of discretion and this discretion must be used in a manner that is not arbitrary and capricious, and should be based upon an "'individualized

---

[10] Petitioner also raised this claim in his petition filed in the California Supreme Court, but the Court summarily denied the petition without comment.  Lod. Docs. 5, 6.

consideration of the offense, the offender, and the public interest.'" (Sandoval, at p. 847; § 1170, subd. (b).)

Defendant argues that the trial court employed an unconstitutional sentencing standard by weighing the aggravating and mitigating factors, as was required pre-Sandoval.  This argument misapprehends the holding in Cunningham.  Cunningham did not hold that it is unconstitutional for trial courts to weigh aggravating and mitigating factors in deciding what term to impose, as defendant contends.  (Cunningham, supra, 549 U.S. at pp. 288-289.)  Cunningham simply held that the prior version of the DSL, which required the trial court to impose the middle term unless the court found aggravating facts that justified the upper term, impermissibly delegated the factfinding function to the trial court. (Id. at p. 292.)  This flaw was cured by the Legislature when it revised the DSL and gave the trial court the discretion to impose any of the three possible terms.  (§ 1170, subd. (b).)  Under the new version of the DSL, a trial court can exercise its discretion to impose the upper term based on a determination that aggravating factors outweigh mitigating factors.  (§ 1170, subd. (b).)  Such a determination is not constitutionally infirm.

Lod. Doc. 4 at 5-7 (parallel citations omitted).

    2.  Discussion

        In Cunningham, the United States Supreme Court held, based on Apprendi v. New Jersey, 530 U.S. 466 (2000), and subsequent cases, that California's then-existing determinate sentencing law violated the Sixth Amendment because it authorized the trial judge, not the jury, to find the facts permitting an upper term sentence.  549 U.S. at 293.  However, pursuant to California law at the time petitioner here was sentenced (October 22, 2012), California's Determinate Sentencing Law for a violation of a statute specifying three terms of imprisonment had been amended in response to the Cunningham decision to provide that the choice between the three terms "shall rest within the sound discretion of the court" without the need to find and weigh aggravating or mitigating factors.  See Cal. Penal Code § 1170(b) (2009).  In light of this amendment to California's sentencing law, the state law under which the trial judge exercised discretion to sentence petitioner to the maximum term for the sentence enhancements did not violate the Sixth Amendment.  See Chioino v. Kernan, 581 F.3d 1182, 1186 (9th Cir. 2009) (describing California's amended Determinate Sentencing Law as "amending [the law] to comply with the

8

1    constitutional requirements of Cunningham" ); Butler v. Curry, 528 F.3d 624, 652 n. 20 (9th Cir.

2    2008) ("Following the decision in Cunningham, the California legislature amended its statutes

3    such that imposition of the lower, middle or upper term is now discretionary and does not depend

4    on the finding of any aggravating factors."); Ochoa v. Uribe, 2013 WL 866118, at *7 (C.D. Cal.

5    Jan. 28, 2013) ("Because the amendment to § 1170(b) eliminated the middle term as the statutory

6    maximum, petitioner has not shown that the imposition of the upper terms violated the rule

7    formed in Apprendi, Blakely, and Cunningham."); Lloyd v. Gonzalez, 2012 WL 84046, at *3

8    (C.D. Cal. Jan.10, 2012) ("Under [the 2007 amendment to California Penal Code § 1170(b) ] the

9    trial judge was authorized in its [*sic*] discretion to sentence Petitioner to the upper term without

10   any aggravating factors being proven to a jury or admitted by Petitioner."); Jones v. Knipp, 2012

11   WL 3839428, at *6 (C.D. Cal. July 27, 2012).

12          Petitioner argues, however, that it was not so much the state law that was applied that

13   violated the rule set forth in Cunningham, but how the trial judge in his case applied that rule to

14   justify the imposition of the upper term.  Petitioner claims that the trial judge failed to properly

15   exercise the discretion afforded by the applicable state law by merely weighing the aggravating

16   factors against the mitigating factors.  However, as the state appeals court discussed in its

17   decision, a trial court can exercise its discretion under the amended California Penal Code §

18   1170(b) to impose the upper term based on a determination that aggravating factors outweigh

19   mitigating factors without running afoul the Supreme Court's interpretation of the Sixth

20   Amendment set forth in Cunningham.  Accordingly, the state trial court judge did not violate

21   petitioner's Sixth Amendment right by engaging in such a practice to justify the imposition of the

22   upper term.  Nor did the state appellate court unreasonably apply clearly established Federal law

23   in denying petitioner's claim that the trial court's conduct violated his constitutional rights.

24          Petitioner also appears to argue that the state trial court abused its discretion under state

25   law by selecting the statutory maximum sentence.  However, absent some federal constitutional

26   violation, a violation of state law does not provide a basis for habeas relief.  Estelle v. McGuire,

27   502 U.S. 62, 67-68 (1991).  Therefore, petitioner fails to state a cognizable claim for federal

28   habeas relief to the extent his claim is based merely on the alleged abuse of discretion under state

law.

    B.  Ineffective Assistance of Counsel Claim

    Second, petitioner argues that his trial counsel acted deficiently by failing to raise an objection during the sentencing phase of the trial when trial court used the same prior conviction to both enhance and aggravate petitioner's sentence in violation of California law.  Petitioner asserts that he was prejudiced by this conduct because had his trial counsel objected, "it is reasonably probable the trial court would have stricken the priors or imposed the middle term." Ptn. at 22.

        1.  State Court Decision

    In the last reasoned decision on this claim,[11] the California Court of Appeal, Third Appellate District wrote:

> Defendant argues that he was denied the constitutional guarantee of effective counsel because his trial counsel erroneously failed to object to the trial court's improper dual use of his prior felony conviction and prison priors.
>
> Rule 4.420(c) of the California Rules of Court provides in part as follows: "[A] fact charged and found as an enhancement may be used as a reason for imposing the upper term only if the court has discretion to strike the punishment for the enhancement and does so."
>
> Defendant contends that the trial court made improper dual use of his previous convictions when it imposed the upper-term sentence. During sentencing, the court cited defendant's "past felony . . . convictions" as one of a "range of factors" for imposing the upper term.  In conjunction with using defendant's prior convictions as an aggravating factor, the court also used one of those prior convictions to double the term from three to six years.  Defendant argues that dual use of his prior conviction to enhance his sentence and justify the upper term was improper and trial counsel should have objected on that basis.
>
> Under Strickland v. Washington (1984) 466 U.S. 668, 686, in order to prevail on an ineffectiveness of counsel claim, a defendant must show, first, that the counsel's performance was "deficient."  (Id. at

---

[11] Petitioner also raised this claim in his petition filed in the California Supreme Court, but the Court summarily denied the petition without comment.  Lod. Docs. 5, 6.

p. 687.)  Such deficiency is established by proving that the representation fell below an objective standard of reasonableness. (Id. at p. 687.)

Defendant argues that there was no tactical or strategic justification for counsel's error, and thus it should follow that trial counsel's conduct fell below any objective standard of reasonableness.  While the trial court would appear to have made an improper dual use of a prior strike conviction, to the extent that it relied on defendant's "prior convictions" as one of the aggravating circumstances justifying imposition of the upper term while using the strike prior to enhance defendant's sentence, defense counsel reasonably could have chosen not to object because the strike prior was one of only *several* prior convictions, and the prior convictions themselves were only one of *several* aggravating factors the trial court relied on. Hence, defense counsel could have reasonably decided that asking the trial court to omit the strike prior from its determination of which term to impose would not have made a material difference in the court's decision.  Defendant's claim of ineffective assistance of counsel is thus without merit.

Lod. Doc. 4 at 7-8 (parallel citations omitted).

       2.  Legal Standards

     The Supreme Court has enunciated the standards for judging ineffective assistance of counsel claims.  See Strickland v. Washington, 466 U.S. 668 (1984).  First, a defendant must show that, considering all the circumstances, counsel's performance fell below an objective standard of reasonableness.  Strickland, 466 U.S. at 688.  To this end, the defendant must identify the acts or omissions that are alleged not to have been the result of reasonable professional judgment.  Id. at 690.  The court must then determine, whether in light of all the circumstances, the identified acts or omissions were outside the wide range of professional competent assistance. Id.  Second, a defendant must affirmatively prove prejudice.  Id. at 693.  Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694.  A reasonable probability is "a probability sufficient to undermine confidence in the outcome."  Id.; see also United States v. Murray, 751 F.2d 1528, 1535 (9th Cir. 1985); United States v. Schaflander, 743 F.2d 714, 717-18 (9th Cir. 1984) (per curiam).

11

As to ineffective assistance claims in the federal habeas context, the Supreme

Court has instructed:

> Establishing that a state court's application of <u>Strickland</u> was unreasonable under § 2254(d) is all the more difficult. The standards created by <u>Strickland</u> and § 2254(d) are both "highly deferential," <u>id.</u>, at 689; <u>Lindh v. Murphy</u>, 521 U.S. 320, 333, n. 7, (1997), and when the two apply in tandem, review is "doubly" so, <u>Knowles</u>, 556 U.S., at ----, 129 S. Ct. at 1420. The <u>Strickland</u> standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at ----, 129 S. Ct. at 1420. Federal habeas courts must guard against the danger of equating unreasonableness under <u>Strickland</u> with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard.

<u>Harrington v. Richter</u>, 131 S. Ct. 770, 787-88 (2011) (parallel citations omitted).

### 3.  Discussion

Petitioner fails to demonstrate that his trial counsel's performance fell below the objective standard of reasonableness by not objecting to the trial court's dual use of petitioner's prior felony convictions. Even assuming, without deciding, that the trial court had erred in using petitioner's prior strike conviction as both an aggravating factor to support the imposition of the upper term and as an enhancement to petitioner's sentence and that petitioner's counsel's objection to that practice would likely have been sustained had it been made, petitioner fails to show how his counsel fell below the highly deferential standard set forth in <u>Strickland</u> by failing to make such an objection.

As the state appeals court noted in its opinion, petitioner's "strike prior was one of only *several* prior convictions, and the prior convictions themselves were only one of *several* aggravating factors the trial court relied on" to sentence petitioner to the upper term. Lod. Doc. 4 at 8 (emphasis in original). Had petitioner's counsel objected to the trial court's dual use of the prior strike and had the trial court sustained that objection, there were still several other convictions outside of petitioner's strike conviction that the court did use and could have continued to use to justify its determination that petitioner's criminal conviction history was an aggravating factor. <u>See</u> Lod. Doc. 8 at 685. Moreover, the trial court also referred to several

12

1   other aggravating factors in support of its decision that likely would have justified the imposition

2   of the upper term even absent consideration of petitioner's prior convictions.  Id.  As the state

3   appeals court reasonably determined, petitioner's counsel could have reasonably decided that

4   objecting to the trial court's dual usage of petitioner's prior strike conviction would not have

5   materially altered the court's sentencing decision.  Accordingly, trial counsel's failure to raise the

6   objection petitioner contends should have been raised did not fall below the objective standard of

7   professional reasonableness under the circumstances. See Jones v. Barnes, 463 U.S. 745, 751

8   (1983) ("Neither Anders nor any other decision of this Court suggests, however, that the indigent

9   defendant has a constitutional right to compel appointed counsel to press nonfrivolous points

10  requested by the client, if counsel, as a matter of professional judgment, decides not to present

11  those points.").

12        Moreover, petitioner cannot plausibly show that but for his trial counsel's failure to object

13  to the trial court's dual use of his prior strike conviction "there [was] a reasonable probability that

14  . . . the result of the proceeding would have been different."  Strickland, 466 U.S. at 694.  As

15  discussed above, the trial court based its decision to impose the upper sentencing term on several

16  other aggravating factors in addition to petitioner's conviction history that, in the absence of

17  petitioner's prior convictions, would likely have been sufficient to support that decision.

18  Therefore, petitioner cannot believably demonstrate that his counsel's failure to object to the trial

19  court's dual use of petitioner's strike conviction in sentencing him was prejudicial because it is

20  likely that the sentencing outcome would not have been affected even had the objection been

21  raised.

22        Petitioner establishes neither element required to sustain an ineffective assistance of

23  counsel claim with regard to his trial counsel's conduct.  Accordingly, his claim is denied.

24  /////

25  /////

26  /////

27  /////

28  /////

13

1

<u>CONCLUSION</u>

2          Based on the foregoing, IT IS HEREBY ORDERED that the petition for writ of habeas

3  corpus (ECF No. 1) is denied.  The Clerk of Court shall close this case.  The court declines to

4  issue the certificate of appealability referenced in 28 U.S.C. § 2253.

5  Dated:  July 14, 2016

6                                                    _____
                                                     CAROLYN K. DELANEY
7                                                    UNITED STATES MAGISTRATE JUDGE

8

9

10  11 hubert0588.hc

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

14